CENTRAL R. CO. OF N. J. v. UNITED STATES.

No. 17863.

United States Court of Claims.

July 13, 1953.

Charles J. Milton, Jersey City, N. J., Milton, McNulty & Augelli, Jersey City, N. J.,

and William F. Hanlon, New York City, on the brief, for plaintiff.

Bruce G. Sundlun, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

Based on the foregoing facts, the issue is whether the plaintiff or the defendant should bear the loss occasioned by the unfortunate accidents in which three people were killed and some property destroyed when vehicles were struck by passing trains at a crossing established for the convenience of the Government.

The individual claims which were involved in suits filed against the railroad company were settled for a total sum of $124,112.46. The settlements were on a reasonable basis, considering the damages, which were undisputed. The plaintiff company made settlement with the individual claimants and now asks reimbursement.

In this unusual case neither side is wholly free from blame.

During World War II the Army desired to move bombers from the Newark Airport to Port Newark, New Jersey, for shipment overseas. It was necessary to cross four parallel tracks of plaintiff's railroad. There was a regular public crossing available about 100 feet from the one involved herein, but such crossings are only about 20 feet wide. To have used it would have required a partial dismantling of the bombers. The Army desired a crossing 50 feet wide.

After some negotiation the plaintiff agreed to construct a private crossing. Construction was commenced on February 11, and the crossing was opened to traffic on February 18, 1942. It was not constructed for profit, but wholly for the benefit of the Government, at its expense and according to its specifications.

The plaintiff requested the Army to provide "flashers" for use on the crossing, which would automatically signal the approach of a train and thus avoid the neces-sity of having a watchman. The Army at first agreed to the request, but later refused to furnish the "flashers" because of the lack of material and because of a War Department ruling. The contract which was later signed and dated back provided that the plaintiff should furnish a watchman at defendant's expense for the airport side and the defendant would furnish a watchman or guard for the port side of the tracks. It was agreed that the licensee, the defendant, would permit the crossing to be used only for the movement of Government matériel and for vehicles which were authorized by the Government to transport such matériel.

On one occasion before the accidents the railroad company complained that unauthorized people were using the crossing. The Army issued an order limiting its use to the transportation of bombers and vehicles carrying Government war matériel, but there were subsequent violations and the railroad company again protested.

As stated in our findings the major contributing factor to the actual accidents was the negligence of plaintiff's watchman in taking down the stop sign and permitting vehicles to cross while a regularly scheduled train was approaching. It was to some extent contributed to by the fact that the Government watchman or guard, while inexperienced and new, was also in position to have seen the approaching train. While in one instance he had been on duty only one day, the defendant had changed the guards from time to time.

The defendant seeks to escape any liability on the ground that its watchman on the port side had been on duty only one day and was subject to the lead of the regular watchman who was located on the airport side, and who was an experienced employee of the plaintiff. At the same time he had his duties to perform and the manner in which he performed them was the responsibility of the defendant. His action, therefore, was a contributing factor.

It is true, as plaintiff contends, that the crossing was not constructed for its benefit, but wholly for the benefit of the United States Government.

■ On the other hand, a railroad company is allowed certain privileges as a com-

mon carrier, including that of constructing its lines across the country and across private property, and if necessary it may condemn property for such purpose. One of its corresponding obligations is to furnish appropriate crossings for use by the public. While this was a private crossing, the defendant, due to the exigencies of war, undoubtedly through condemnation could have constructed the crossing. The willingness of the plaintiff to cooperate made this course unnecessary.

While its action was voluntary and willingly taken, it is still responsible for the negligence of its employees who are doing their assigned work.

Considering the entire record and all the circumstances of the case, we think the damages and losses should be shared and that the Government should reimburse the plaintiff for one-half the expense incurred in the settlements, which would make the total reimbursement for the claims growing out of the two accidents the sum of $62,056.23.

Concededly this is not a legal obligation, but we think that such a sharing of the expense would be equitable and just, and we so recommend to the Congress.

HOWELL, MADDEN, WHITAKER and LITTLETON, Judges, concur.